Filed 4/28/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARC ANTHONY-TOISAAN CARR,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>THE DEPARTMENT OF DEVELOPMENTAL SERVICES et al.,<br><br>    Real Parties in Interest. | A147957<br><br>(Contra Costa County<br>Super. Ct. No. 2-319321-6) |

Petitioner Marc Anthony-Toisaan Carr seeks a writ of mandate or prohibition directing the respondent superior court to vacate his competency trial, and to instead order that he be placed in either the Porterville Developmental Center or Patton State Hospital for evaluation and treatment. Because the statutory scheme surrounding competency determinations envisions the speedy attainment of mental competence and vests responsibility for competency certification in state mental health officials, Carr's competency evaluation and certification by the Department of Developmental Services and the Department of State Hospitals while he was awaiting transfer for treatment at Porterville or Patton was permissible. The declaration and certificate of competency filed in the superior court March 17, 2016 was adequate to initiate proceedings to determine whether his competency was restored. The petition for writ of mandate or prohibition is denied.

1

BACKGROUND

While Carr was in county jail awaiting trial on charges that included murder with special circumstances, kidnapping and attempted murder of a peace officer, the court determined he was incompetent to stand trial and referred him to the Regional Center of the East Bay for a placement recommendation. Based upon the Regional Center's report, on August 18, 2015, the court committed Carr to the Porterville Developmental Center, the only secure treatment facility in California for individuals with intellectual disabilities. An assessment by the Department of Developmental Services diagnosed Carr with schizophrenia and mild intellectual disability.

When Carr was not yet transferred to Porterville by October, the court ordered his transfer within 21 days, and required the directors of Porterville and the Regional Center to show cause before the court if he was not transferred. On November 3, 2015, the court heard the order to show cause. Shortly before the hearing, the district attorney and Carr's counsel were informed by state officials that Carr was not suitable for placement at Porterville because he required involuntary medication. The court issued an involuntary medication order, and put the hearing over for 30 days to allow the state to determine Carr's medically appropriate placement.

When the case was before the court 30 days later, the state sought to have Carr evaluated by a psychologist from the Department of Developmental Services and a psychiatrist from the Department of State Hospitals. At the time, Carr was on the institution waiting list and had been waiting four months for a transfer. His wait was not as long as the year the court had observed in some cases, and the court noted the state was not willfully disregarding its placement order.

The court determined that in light of the conflicting opinions on whether Carr was feigning symptoms when he was originally adjudicated incompetent to stand trial, a further evaluation would not be prejudicial as he would remain on the wait list and it would not further delay his appropriate placement. So, the court permitted a further evaluation.

2

When the medical director of the Department of State Hospitals reviewed file material pertaining to Carr obtained from the Department of Developmental Services, she formed an opinion that he was feigning his incompetence to stand trial and that his malingering coupled with his potential for violence made him unsuitable for treatment at a state hospital. She discussed her opinion with a psychologist at the Department of Developmental Services, and arranged for Carr to be evaluated by a psychiatrist with a formal forensic background. Dr. Benjamin Goldberg, with the Department of Psychiatry and Behavioral Services at the University of California at Davis, performed the evaluation.

Following his initial evaluation, it was Dr. Goldberg's opinion to a reasonable medical certainty that Carr met the clinical standards for malingering, antisocial personality disorder and borderline intellectual functioning. He did not believe Carr met the criteria for a serious psychotic disorder, and at the time of the evaluation Carr had adequate functional ability in memory, executive functioning and planning, and independent living. It was Dr. Goldberg's opinion that due to his lack of psychiatric symptoms and history of predatory behavior, Carr's most appropriate placement was in a secure correctional facility.

But Dr. Goldberg's initial assessment was incomplete. He was not provided medical records from the county of Contra Costa Health Services Mental Health Division for any treatment provided Carr after March 2009 or records of his treatment while in the county jail. The Department of Developmental Services sought a court order requiring production of these county medical records.

Carr opposed the application on the basis that the Regional Center made a placement recommendation for the Porterville Developmental Center or Patton State Hospital in accord with Penal Code section 1370.1, subdivision (a)(1)(B), the statutory directive governing placement of individuals with developmental disabilities who are found incompetent to stand trial. Carr's attorney argued that once the placement recommendation was made, Dr. Goldberg had no authority to evaluate Carr for any purpose other than to determine which institution was most suitable for his placement.

3

The Department of Developmental Services responded that in the process of considering Carr's possible placement, Dr. Goldberg came to the conclusion that he was malingering and was not suitable for placement in any state hospital setting. So, the Department of State Hospitals was seeking further records and wished to evaluate Carr for his competency to stand trial in light of Dr. Goldberg's assessment and the concurrence of the Department of Developmental Services and Department of State Hospitals that Carr was too dangerous to be housed at either of their facilities. Carr's counsel argued that because he was found incompetent to stand trial, the statutory scheme required that he be placed in a competency restoration treatment program before he could be further assessed or the court could again consider whether he was competent.

The court authorized Dr. Goldberg to evaluate Carr to determine his possible competence to stand trial and authorized the production of his county mental health records. Thereafter, Carr moved to prevent the competency evaluation, and the court ordered that it go forward. The competency evaluation occurred and Dr. Goldberg's report was provided to the court in March 2016. It was Dr. Goldberg's opinion that Carr was malingering, had an antisocial personality disorder and borderline intellectual functioning. Dr. Goldberg concluded to a reasonable medical certainty that Carr was able to understand the nature of his criminal proceedings and assist his attorney in the conduct of his defense in a rational manner. Dr. Goldberg also filed a declaration and certificate of competency. The court discharged the order to show cause directed to the Department of Developmental Services and scheduled a competency trial for August 2016.

Carr challenged the decision to hold the competency trial by a writ of mandate/prohibition filed in this court. We denied the petition. Carr thereafter filed a petition for review in the Supreme Court. The court granted review and transferred the case back to us with directions that we vacate the order denying Carr's writ petition and issue an order directing the superior court to show cause why the relief sought in the petition should not be granted. We did so, and the matter is now fully briefed.

DISCUSSION

A person may not be tried for a public offense while mentally incompetent due to a mental disorder or developmental disability.  (Pen. Code, § 1367, subd. (a).)[1]  If a person is found mentally incompetent and has a developmental disability, the criminal proceedings are suspended until competency has been restored.  (§ 1370.1, subd. (a)(1)(B).)  Until the person becomes mentally competent, section 1370.1 requires that the court "shall consider a recommendation for placement, which recommendation shall be made to the court by the director of a regional center or designee.  In the meantime, the court shall order that the mentally incompetent defendant be delivered by the sheriff or other person designated by the court to a state hospital or developmental center for the care and treatment of the developmentally disabled or any other available residential facility approved by the director of a regional center for the developmentally disabled established under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code as will promote the defendant's speedy attainment of mental competence, or be placed on outpatient status pursuant to the provisions of Section 1370.4 and Title 15 (commencing with Section 1600)."  (§1370.1, subd. (a)(1)(B)(i).)[2]  Thus, the statutory scheme envisions that until a defendant with a developmental disability attains competency, he or she will be housed in either a developmental center or state hospital for treatment.  (*In re Willams* (2014) 228 Cal.App.4th 989, 1002, fn.7 (*Williams*).)  But the statute is clear that the purpose of such treatment is to "promote the speedy attainment of mental competence."  (§ 1370.1, subd. (a)(1)(B)(i).)

The crux of Carr's legal challenge to the competency proceedings turns on the application and import of the directive in Penal Code section 1370.1 that a developmentally disabled defendant who is found incompetent to stand trial be

---

[1] Unless stated otherwise, further statutory references are to the Penal Code.

[2] Section 1370.1 also has specific placement considerations in certain circumstances when a defendant has been charged with an offense specified in Section 290.  While Carr has been charged with murder committed during an attempted rape, no one has argued these provisions apply in his case.  (§ 1370.1, subd. (a)(1)(B)(ii) and (iii).)

transferred to a state hospital or developmental center for care and treatment. (§ 1370.1, subd. (a)(1)(B)(i).) According to Carr, once such a defendant has been assessed by the Department of Developmental Services and receives a recommendation for placement, the defendant's competence to stand trial may not be reassessed until he or she has been transferred to such an institution and provided care and treatment designed to restore competency.

Carr's petition for mandate is directed entirely at the trial court's orders that permitted Dr. Goldberg to conduct a competency evaluation while Carr was awaiting placement in a state hospital and the competency hearing set following Dr. Goldberg's certification that Carr was competent. He is not seeking an order directing his placement at a state developmental center or hospital due to his lengthy wait for placement.

Indeed, the case law surrounding delay in bringing a defendant to trial due to incompetence has historically focused on the unfairness and possible harm that results from prolonged or indefinite commitment and the state's interest in bringing a defendant to trial with minimal delay. (See *Jackson v. Indiana* (1972) 406 U.S. 715; *In re Davis* (1973) 8 Cal.3d 798.) Our legislature responded to these considerations of fairness and expediency in 1974 to eliminate commitment in situations where there is no likelihood a defendant may attain competency and to provide specific time limits for ongoing competency assessment. (*Williams*, *supra*, 228 Cal.App.4th at p. 1013.)

Section 1370.1, subdivision (b)(1) provides: "Within 90 days of admission of a person committed pursuant to subdivision (a), the executive director or designee of the state hospital, developmental center, or other facility to which the defendant is committed, or the outpatient supervisor where the defendant is placed on outpatient status, shall make a written report to the committing court and the regional center director or a designee concerning the defendant's progress toward becoming mentally competent. If the defendant has not become mentally competent, but the report discloses a substantial likelihood the defendant will become mentally competent within the next 90 days, the court may order that the defendant shall remain in the state hospital, developmental center, or other facility or on outpatient status for that period of time. Within 150 days of

6

an admission made pursuant to subdivision (a) or if the defendant becomes mentally competent, the executive director or designee of the hospital or developmental center or person in charge of the facility or the outpatient supervisor shall report to the court and the regional center director or his or her designee regarding the defendant's progress toward becoming mentally competent.  The court shall provide to the prosecutor and defense counsel copies of all reports under this section.  If the report indicates that there is no substantial likelihood that the defendant has become mentally competent, the committing court shall order the defendant to be returned to the court for proceedings pursuant to paragraph (2) of subdivision (c)."[3]

"The maximum commitment under section 1370.1 is three years."  (*Williams*, *supra*, 228 Cal.App.4th at p. 1013.)  But while the statutory scheme contains an outer limit for a commitment to restore competency, the law is silent on the minimum amount of time a defendant must be referred for treatment.  Instead, the statute requires that when the medical director of the state hospital determines a defendant has regained competence, "the director shall immediately certify that fact to the court."  (§ 1372, subd. (a)(1).)  The sheriff is then required to immediately redeliver the defendant to court without a further court order.  (§ 1372, subd. (a)(2) & (3).)  Moreover, a defendant is to be returned to court if it is determined that no treatment for the defendant's mental impairment is being conducted.  (§ 1370.1, subd. (b)(3).)

Carr argues that there is no legal authority that allows the Department of State Hospitals to certify a defendant's restoration to competence without first placing the defendant in a treatment facility, thereafter providing treatment and conducting periodic evaluations.  We disagree.  The statute is geared to the "speedy attainment of mental competence."  (§ 1370.1, subd. (a)(1)(B)(i).)  It guards against the unduly prolonged commitment of a defendant in circumstances when treatment is not provided or competence will not likely be restored and contains an outer limit for the length of any

---

[3] Paragraph (2) of subdivision (c) refers to procedures for civil commitment under the Lanterman-Petris Short Act or commitment to the Department of Developmental Services under Welfare and Institutions Code section 6500 et seq.

commitment.  (§ 1370.1, subd. (b)(1), (c)(1)(A).)  Moreover, it vests the authority in state clinicians without restriction to "immediately certify" any determination that a defendant has regained mental competence.  (§ 1372, subd. (a)(1).)

We understand the frustration of counsel and a defendant who must endure a prolonged wait for placement in a suitable treatment program.  Indeed, we share the concerns expressed by our colleagues over what appears to be "a statewide problem in finding adequate housing for persons declared mentally incompetent to stand trial, especially those who are developmentally disabled." (*Williams*, *supra*, 228 Cal.App.4th at p. 1018.)  But a concern over extended delay in placing defendants in suitable facilities for treatment does not warrant usurping the statutory authority vested in clinicians to certify a defendant as competent when their good faith medical judgment says that is the case.  In fact, requiring defendants to be placed in state hospitals when the state officials and mental health professionals in charge of their care honestly conclude they are malingering will exacerbate the delays faced by defendants truly in need of restorative treatment.

Here, although Carr claims the certification of his competency was employed as a subterfuge to circumvent the state's obligation to place him in a state hospital, nothing in the record suggests the mental health clinicians evaluating his status on behalf of the Department of Developmental Services employed anything other than their best clinical judgment.  If that is not so, Carr has the opportunity to demonstrate before the trial court in the upcoming competency trial that his diagnosis of malingering was a sham done to circumvent the court's placement order.  But the mere fact that the court ordered his placement in a treatment facility does not preclude state hospital officials from certifying his competence to the court when they sincerely conclude that he was never incompetent in the first place.  (E.g., *People v. Superior Court* (1935) 4 Cal.2d 136, 143–144, overruled in part on other grounds by People v. Gilbert (1944) 25 Cal.2d 422.)

DISPOSITION

The petition for writ of mandate and prohibition is denied.

8

_____

Siggins, J.

We concur:

_____

Pollak, Acting P.J.

_____

Jenkins, J.

*Carr v. Superior Court*, A147957

Trial Court:                                    Contra Costa County Superior Court


Trial Judge:                                    Patricia M. Scanlon


Counsel:

Diana Alicia Garrido, Department of the Public Defender; Robin Lipetzky, Contra Costa County Public Defender for Petitioner.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Susan M. Carson, Supervising Deputy Attorney General, Gregory D. Brown, Deputy Attorney General for Real Parties in Interest.