Filed 1/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Appellant, <br> v. <br> MARC CARR, <br>     Defendant and Respondent. | A158637 <br><br> (Contra Costa County Super. Ct. No. 51907013) |

The Penal Code vests the trial court with the responsibility to determine whether a criminal defendant found incompetent to stand trial and committed for treatment and competency training has been restored to competency. That determination, not a health official's certification of competency that initiates court proceedings to consider whether the defendant has regained competency, terminates the defendant's commitment. Here, accordingly, the trial court was correct when it found that the filing of a certificate of competency did not terminate the defendant's commitment so as to prevent the three-year maximum commitment term from accruing. We affirm.

## BACKGROUND

The early history of this case is set out in this court's opinion in *Carr v. Superior Court* (2017) 11 Cal.App.5th 264 (*Carr I*). We will not repeat it here, and will only summarize the facts relevant to this appeal.

1

While Carr was awaiting trial on serious charges the trial court found him incompetent to stand trial. In August 2015 the court ordered Carr committed to the Porterville Developmental Center (Porterville), a secure treatment facility for individuals with intellectual disabilities.

Some two months later, Carr remained in jail and had not yet been transferred to Porterville. The court ordered the facility to admit him within 21 days and ordered it and the Regional Center of the East Bay (Regional Center) to show cause why they should not be sanctioned for failure to comply with its August order.

In November 2015, shortly before the hearing on the order to show cause, the parties were informed that Porterville was not a suitable placement for Carr because he required involuntary medication. The Regional Center recommended that Carr be placed at Patton State Hospital. The court issued an involuntary medication order and continued the hearing to allow the state to decide his appropriate placement.

In December 2015 the Department of Developmental Services (DDS) sought to have Carr jointly re-evaluated by a DDS psychologist and a forensic psychiatrist for the Department of State Hospitals (DSH). The court authorized the new evaluation. Carr remained on the wait list for Porterville.

In March 2016, a DSH psychiatrist certified that Carr was competent to stand trial. The psychiatrist opined that Carr "meets the criteria for malingering, antisocial personality disorder and borderline intellectual functioning and does not meet criteria for any serious psychotic disorder."

Carr filed a petition for writ of mandate in this court challenging the certification of competency. (*Carr I, supra,* 11 Cal.App.5th at p. 378.) On April 28, 2017, we held the certificate of competency "was adequate to initiate proceedings to determine whether his competency was restored," and denied

the petition. (*Id*. at p. 266) But we cautioned that, "although Carr claims the certification of his competency was employed as a subterfuge to circumvent the state's obligation to place him in a state hospital, nothing in the record suggests the mental health clinicians evaluating his status on behalf of the [DDS] employed anything other than their best clinical judgment. If that is not so, Carr has the opportunity to demonstrate before the trial court in the upcoming competency trial that his diagnosis of malingering was a sham done to circumvent the court's placement order." (*Id*. at p. 272.)

A hearing on whether Carr had been restored to competence began on February 13, 2018 pursuant to Penal Code section 1372.[1] On June 28, 2018 the court found Carr incompetent as a result of developmental disability and mental illness. After another referral to the Regional Center for a placement recommendation, on August 27, 2018 the court committed Carr to the custody of the State Department of Developmental Center Services and again ordered his placement at Porterville.

In November 2018, Carr moved for release on the ground he had completed the maximum three-year commitment authorized by law. The trial court denied the motion based on its conclusion that DSH's March 2016 certification of competency tolled the commitment period. Carr then petitioned the superior court for a writ of habeas corpus, again asserting he had exceeded the maximum three-year commitment period set forth in

---

[1] Further statutory citations are to the Penal Code.

3

section 1370.1, subdivision (c)(1).[2] On June 10, 2019, the superior court issued an order to show cause as to why Carr was not entitled to relief.

On September 3, the court rejected the state's contention that the March 2016 state official's certification of competency terminated Carr's commitment and thereby tolled the three-year maximum commitment period. To the contrary, it found the statutory language and the case law "clearly intend that a judge is required to act on the certificate *before* the defendant is found to have recovered competence, or whether he remains incompetent." "The official's filing of a certificate of restoration only had the legal force and effect of causing Petitioner to be returned to court for further proceedings. . . . [W]here, as here, the defendant chose to challenge the certification of competence, the court was required to provide Petitioner a hearing whereupon the court determined whether or not the defendant was competent." Accordingly, the period between the March 2016 certificate of competency and the June 2018 ruling that Carr was incompetent "did indeed count as part of the 'commitment' for purposes of calculating Petitioner's maximum commitment time."

The court ordered that Carr remain confined in local custody pending investigation of alternative civil commitment proceedings. The People promptly appealed, and the court stayed execution of its order pending this appeal.

---

[2] A week later Carr was transported to the Salinas Valley Psychiatric Inpatient Program. Five weeks after that the medical director of the prison's psychiatric inpatient program filed a second certification of competency.

4

**DISCUSSION**

The People contend the court erred when it found Carr had served more than the maximum statutory commitment period. In their view, the court should have excluded from its calculations the periods between (1) the state's initial certification of competence on March 16, 2016 and the court's rejection of that certification on August 27, 2018; and (2) the second certification of competency on May 23, 2019 and the grant of habeas relief on September 3, 2019. The argument fails based upon its faulty premise that a certification of competency, not a court finding, terminates the statutory commitment period.

## A. Statutory Framework

The Legislature has provided a comprehensive and orderly process for evaluating defendants who are incompetent to stand trial and returning them to court when their competence is regained. (*People v. Bryant* (2009) 174 Cal.App.4th 175, 184 (*Bryant*); *People v. Bye* (1981) 116 Cal.App.3d 569, 571.) If at any time during a criminal proceeding a doubt arises regarding the defendant's competence to stand trial, the court must hold a competency hearing. (§§1368, 1369.) If the court finds the defendant incompetent to stand trial, the criminal proceedings are suspended and the defendant is committed for evaluation and treatment pursuant to section 1370 (mental illness) or 1370.1 (developmental disability). (*People v. Rells* (2000) 22 Cal.4th 860, 865-866 (*Rells*).)

"Penal Code section 1369 sets forth the procedures for the trial in which the question of the mental competence of the defendant is to be determined. It provides that such a trial may be made 'by court or jury' [citation], and that, if by jury, it must be decided by unanimous verdict [citation.] It also provides for the appointment by the court of one or more

5

experts to examine the defendant [citation], the introduction of evidence by the defendant and the People [citation], and the presentation of argument by each thereafter [citation].  It states that '[i]t shall be presumed that the defendant is mentally competent unless it is proved by a preponderance of the evidence that the defendant is mentally incompetent.' "  (*Id*. at p. 566.)

"Once incompetency is established, the statutory scheme is replete with mandatory reviews to insure a subject will not be warehoused unduly in a mental institution. He may not even leave the local community if outpatient therapy is deemed sufficient. [Citation.] Whether hospitalized or not, his progress toward competence must be reported to the court within 90 days. [Citation.] Reports must be submitted at six-month intervals and another section 1369 hearing must be held eighteen months after the initial hearing." (*Bye, supra,* 116 Cal.App.3d at pp. 576-577.)

If a statutorily designated health official determines during the commitment that the defendant has regained mental competence, that official must "immediately certify that fact to the court by filing a certificate of restoration with the court. . . ." (§ 1372, subd.(a)(1).)   The filing of the certificate initiates court proceedings to determine whether the defendant's competency has been restored.  (*Carr I, supra,* 11 Cal.App.5th 264, 266; *Rells, supra,* 22 Cal.4th at p. 868.)  The defendant must thereupon be returned to court for "further proceedings" (§1372, subd. (a)(2)(A)) and the court must notify the designated mental health officials "of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence."  (§ 1372, subd. (c).)

Section 1372 addresses restoration of competency.  In contrast to the procedures for an initial competency hearing provided in section 1369, section 1372 does not expressly require a hearing to determine whether competence

6

has been restored after state health officials file a certificate of competency. Nonetheless, "the numerous references in that statue to a hearing indicate a legislative intention that such a hearing be afforded." (*People v. Murrell* (1987) 196 Cal.App.3d 822, 826; see also *Rells, supra,* 22 Cal.4th at pp. 867-868 [section 1369, subdivision (f) presumption of competence at initial competence hearing applies by implication to hearing on recovery of competence]; *In re Taitano* (2017) 13 Cal.App.5th 233, 242 [court decides whether to approve the certification].)

The applicable maximum period of commitment in this case is three years.[3] (§1307.1, subd.(c)(1)(A).) A defendant who has not regained competency within the maximum period must be returned to court and either released or recommitted under alternative commitment procedures. (§1370.1, subds. (c)(1)(A), (c)(2)(A).) "In no event can any defendant be committed longer than three years under this statutory scheme." (*Bye, supra,* 116 Cal.App.3d 569.)

### B. Analysis

The People maintain that a defendant who has been certified by state authorities to be competent and returned to court pursuant to section 1372 "is no longer 'committed' for purposes of calculating the maximum period" of commitment. The trial court correctly rejected their position.

The relevant statutes do not explicitly state the point at which an incompetency commitment ends, but the statutory language and the case law discussed above clearly indicate that the certificate of competency serves only to initiate proceedings by which the court will hear and decide the question of

---

[3] Effective January 1, 2019, the maximum commitment was reduced from three years to two years. (Stats. 2018, ch.1008, §2 (SB 1187).) The reduction is not material to Carr's situation.

the defendant's competency.  Under section 1372, subdivision (a), a health official who determines the defendant has regained competency must file a certificate to that effect with the superior court.  (§1372, subd. (a)(1).)  The filing of that certificate, in turn, automatically triggers the defendant's return to the court "for further proceedings."  (§1372, subds. (a)(2), (a)(3)(A).)  At that point the court must notify specified mental health officials "of *the date of any hearing on the defendant's competence* and whether or not the defendant was found *by the court* to have recovered competence."  (§1372, subd.(c), italics added.)

The statute further specifies actions to be taken "[i]f *the committing court approves* the certificate of restoration to competence."  (§1372, subd.(d), (e).)[4]  If the defendant is in custody, the court must hold a hearing to determine the suitability of release pending further proceedings (§1372, subd.(d)) and, if release is not suitable, may order placement in a facility

---

[4] Under section 1372, subdivision (d), "If the committing court approves the certificate of restoration to competence as to a person in custody, the court shall hold a hearing to determine whether the person is entitled to be admitted to bail or released on own recognizance status pending conclusion of the proceedings.  If the superior court approves the certificate of restoration to competence regarding a person on outpatient status, unless it appears that the person has refused to come to court, that person shall remain released either on own recognizance status, or, in the case of a developmentally disabled person, either on the defendant's promise or on the promise of a responsible adult to secure the person's appearance in court for further proceedings.  If the person has refused to come to court, the court shall set bail and may place the person in custody until bail is posted."

where the defendant can receive competency maintenance services. (§1372, subd.(e).)[5]

The People's view that the certificate of competence alone suffices to terminate a commitment cannot be squared with the statutory scheme that makes clear it is the trial court, not a state health official, that determines whether the defendant has been restored to competence. The People do not explain how to reconcile their construction of the statutes with the explicit references to a court hearing and determination of competency in section 1372, subdivision (c). Nor, if the commitment terminates when a health official files a certification of competence, would any plausible purpose be served in requiring court to approve the certification as expressly contemplated in section 1372, subdivision (d).

For these reasons alone, the People's construction of the statutory scheme does not stand up to inspection. Statutory language "is construed in the context of the statute as a whole and the overall statutory scheme, so that we give ' "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' . . . An interpretation that renders

---

[5] Under section 1372, subdivision (d), a defendant "who is not admitted to bail or released under subdivision (d) may, at the discretion of the court, upon recommendation of the director of the facility where the defendant is receiving treatment, be returned to the hospital or facility of his or her original commitment or other appropriate secure facility approved by the community program director, the county mental health director, or the regional center director. The recommendation submitted to the court shall be based on the opinion that the person will need continued treatment in a hospital or treatment facility in order to maintain competence to stand trial or that placing the person in a jail environment would create a substantial risk that the person would again become incompetent to stand trial before criminal proceedings could be resumed."

9

related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme." (*In re Ogea* (121 Cal.App.4th 974, 981-982.)

There are apparently no cases that present this precise issue, but our conclusion is consistent with precedent, including from this court, that uniformly considers the certificate of competency to be the event that triggers court proceedings to determine whether the defendant has regained competency. (*Carr I, supra,* 11 Cal.App.5th at p. 267 [certificate initiated proceedings to determine whether defendant was restored to competency]; *In re Taitano* (*2017*) 13 Cal.App.5th 233, 242 [criminal proceedings resume upon court approval of certification]; *Murrell, supra,* 196 Cal.App.3d at p 826 [numerous references in section 1372 indicate legislative intention that defendant is entitled to court determination of restoration to competency].) In view of the statutory language and the case law, the People's suggestion that it "goes without saying" that certification terminates a commitment because competency restoration treatment ceases upon the defendant's return to court (see § 1372, subd.(a)(d)(C)) is strikingly unpersuasive.

The People's citation to *Bryant, supra,* 174 Cal.App.4th 175, is also unpersuasive. *Bryant* addresses whether an incompetent defendant was entitled to accrue "good time" credits under section 4019 during two months that inexplicably elapsed between when his treatment team unanimously found him competent and the treating facility filed a certificate of competency based on that report. (*Id*. at pp. 182-185.) The court concluded that, although defendants held under incompetency commitments are generally not entitled to good conduct credits, under Mr. Bryant's specific circumstances "equal protection principles warrant[ed] defendant be given conduct credits that would have been earned had he been returned [to] the

10

county jail if a timely restoration certificate had been issued." (*Id*. at p. 184.) Nothing in this reasoning or conclusion suggests that a certificate of competency terminates the commitment. (See *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [" 'It is axiomatic that cases are not authority for propositions not considered' "]; *Nevarov v. Caldwell* (1958) 161 Cal.App.2d 762, 769 [court should not expand decision beyond its intended application].)

The People argue as a matter of policy that, if commitment time continues to accrue during section 1372 litigation, "there is nothing to prevent a defendant from requesting continuances of the competency hearing until he is no longer subject to any incompetency confinement on the criminal charges." But they fail to mention the trial court's express finding that there is no basis in this case to infer Carr's efforts to oppose the certification contributed to his commitment exceeding the three-year maximum. More generally speaking, as we noted in *Carr I, supra,* the incompetency commitment scheme was primarily created to address concerns of unfairness and possible harm that result from prolonged or indefinite commitments. (*Id*. at 270-271; see *In re Polk* (1999) 71 Cal.App.4th 1230, 1235-1236.) A conclusion that the treating facility's certification alone stops the maximum commitment time from accruing is at odds with those goals.

In this case, the trial court concluded "[t]here is no legislative intention that the time period, within which a defendant reasonably avails himself of the opportunity to challenge the certification, would then be held against him for purposes of extending his maximum commitment period. To hold otherwise would be to undermine the equally compelling intention of the statute that protects the IST defendant from being held beyond his three-year maximum commitment period. In light of this, the statute and case law support the conclusion that not only did the Legislature intend that a

11

defendant be afforded a hearing under §1372, but it also intended that such a defendant would not be held beyond his maximum commitment period." We agree.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*People v. Carr*, A158637

13

Trial Court:   Superior Court of Contra Costa County

Trial Judge:   Honorable Clare Marie Maier

Counsel:

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Seth K. Schalit, Supervising Deputy Attorney General, Bridget Billeter, Deputy Attorney General for plaintiff and appellant.

Contra Costa County Public Defender's Office, Robin Lipetzky, Public Defender, Stephanie Elizabeth Regular, Assistant Public Defender for defendant and respondent.