Filed 6/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JOSE ADAN MEDINA,<br><br>    Petitioner,<br><br>         v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G059331<br><br>(Super. Ct. No. 16NF3065)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate/prohibition to challenge orders of the Superior Court of Orange County, Richard M. King, Judge. Petition granted in part and denied in part.

Martin Schwarz, Interim Public Defender, Sara Ross, Assistant Public Defender, and Allison Chan, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Todd Spitzer, District Attorney, and Holly M. Woesner, Deputy District Attorney, for Real Party in Interest.

\*          \*          \*

**INTRODUCTION**

**I.**

**Summary of Facts**

Petitioner Jose Adan Medina was placed in custody in November 2016 on charges of second degree robbery and misdemeanor sexual battery. In June 2017, the respondent court found that Medina was mentally incompetent to stand trial and had a developmental disability under Penal Code section 1370.1 (undesignated code references are to the Penal Code).

Since the time Medina was adjudicated to be mentally incompetent, he has received neither treatment nor a trial. The regional center and the California Department of Developmental Services (DDS), which have the responsibility for providing services for people with developmental disabilities, disagreed with the court's adjudication and concluded that Medina did not have a developmental disability. Although the incompetency order was legal and binding on the regional center and the DDS, they declined to offer Medina services or recommend placement.

A long standoff ensued. Medina did not receive the treatment to which he was legally entitled but, as he had been adjudicated incompetent, his case was not tried. The root cause of the standoff was that the version of section 1369 and section 1370.1 in effect in 2017, when Medina was found to be incompetent and to have a developmental disability, did not require the regional center's determination that a defendant has a developmental disability. In 2017, a trial court's findings of mental incompetence and developmental disability were sufficient, without concurrence by the regional center, to cause the suspension of criminal proceedings.

In July 2020, the respondent court attempted to end the standoff by vacating the order, entered over three years earlier, adjudicating Medina to be incompetent. The court ordered new examinations and another competency hearing to be held. Medina challenged the respondent court's actions by this petition for writ of

2

mandate/prohibition. We grant the petition in part and order the issuance of a writ directing the respondent court to vacate its order, reinstate the orders adjudicating Medina to be incompetent to stand trial and to have a developmental disability, and determine, in accordance with our instructions, whether the maximum period of confinement has elapsed.

## II.

### Summary of Issues and Conclusions

In our order for the respondent court to show cause, we identified three issues for the court to address:

The first issue was whether the respondent court improperly vacated the earlier finding of incompetence. We conclude the respondent court did not have authority to vacate the order adjudicating Medina to be incompetent and to order a new competency hearing. A court's power to conduct competency hearings is a product of statute, and mental competence of a criminal defendant to stand trial is governed by a comprehensive and orderly scheme set out in sections 1367 through 1376. Section 1368 authorizes a court to conduct a competency hearing initially, when a doubt arises in the judge's mind as to the mental competence of the defendant and defense counsel believes the defendant is or might be incompetent. Section 1372 authorizes a court to conduct a hearing after a certificate of restoration has been filed. Absent a certificate of restoration, for a defendant found to have a developmental disability, no statute authorizes a trial court to otherwise vacate an order finding a defendant to be incompetent or to order any other competency hearing.

Once an initial determination is made that a defendant is incompetent to stand trial and has a developmental disability, the defendant must be housed in a developmental center or state hospital until the term of commitment ends or the defendant regains competence. The process by which a defendant is deemed to have

3

regained competence is governed by section 1372 and begins with the filing of a certificate of restoration. No certificate of restoration was filed in this case.

The second issue was whether the respondent court's order vacating the incompetency order exceeded the scope of a remand order we had issued on June 12, 2020 in response to an earlier writ petition filed by Medina. In the remand order, we directed the respondent court to conduct a hearing and determine whether the maximum time period of commitment had elapsed. By vacating the earlier adjudication of incompetence, the respondent court did exceed the scope of our order; however, because the remand order was issued in the midst of an ongoing case, the order did not circumscribe the court's jurisdiction going forward.

The third issue was whether Medina has been denied due process under the United States Constitution. Based on California Supreme Court authority, we conclude Medina will have suffered a due process violation if he has been in custody or treatment for longer than the maximum commitment period. In the usual case, only days actually spent in commitment at a mental institution or treatment facility are applied to the maximum commitment period. But this case is unusual: Medina has been denied the treatment to which he is legally entitled—and the ability to accrue time toward the maximum commitment period—because the providers of services have not fulfilled their obligations. We shall direct the respondent court to hold another hearing for the purpose of determining whether the maximum period of commitment has ended and direct the court, in making this determination, to apply all days since the date of the commitment order in which Medina has been in jail, prison, or treatment.

4

## STATUTORY SCHEME GOVERNING ADJUDICATION OF COMPETENCE TO STAND TRIAL

### I.

### Procedures to Determine Mental Incompetence and Placement of Defendants Having Developmental Disabilities

A defendant is mentally incompetent to stand trial "if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."  (§ 1367, subd. (a).)

"The Legislature has provided a comprehensive and orderly process for evaluating defendants who are incompetent to stand trial and returning them to court when their competence is regained."  (*People v. Carr* (2021) 59 Cal.App.5th 1136, 1142-1143 (*Carr II*).)  This process is codified in part 2, title 10, chapter 6 of the Penal Code, sections 1367 through 1376.

The process starts when a doubt arises in the judge's mind as to the mental competence of the defendant, and defendant's counsel informs the court that he or she believes the defendant is or may be incompetent.  In that situation, the court must order the question of defendant's competence be determined in a hearing held pursuant to sections 1368.1 and 1369.  (§ 1368, subds. (a), (b).)  Once an order for a hearing to determine the defendant's mental competence has been issued, "all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined."  (*Id*., subd. (c).)

Evaluation, commitment, and treatment of a mentally incompetent defendant follow one of two paths.  Section 1370 applies to a person who may be incompetent to stand trial as a result of a "mental health disorder."  (§ 1367, subd. (b).)  Section 1370.1 applies to person who is incompetent to stand trial as a result of a developmental disability or is incompetent as a result of a mental health disorder and has

5

a developmental disability.  (§ 1367, subd. (b); see *Carr II, supra*, 59 Cal.App.5th at p. 1143.)

Section 1369 sets forth the procedures to determine whether the defendant is mentally competent to stand trial.  The court appoints one or more psychiatrists, psychologists, or other experts to examine the defendant and evaluate whether he or she is competent to stand trial.  (§ 1369, subd. (a)(1) & (2).)  If the defendant is suspected to have a developmental disability then the court must appoint the director of the regional center[1] or the director's designee to examine the defendant and, under the current statute, determine whether he or she has a developmental disability and therefore is eligible for regional center services.  (*Id.*, subd. (a)(3).)  The regional director or designee must provide the court with a written report informing the court of the determination and must recommend a suitable residential facility or state hospital for the defendant.  (*Id.*, subd. (a)(3) & (4).)  "Prior to issuing an order pursuant to this section, the court shall consider the recommendation of the regional center director."  (§ 1369, subd. (a)(4).)  A defendant must be provided necessary care and treatment while awaiting a determination of competency.  (*Ibid.*)

Trial may be by court or jury.  (§ 1369.)  Evidence and argument may be presented by both the defendant and the prosecution (*Id.*, subds. (b)–(e)), and the defendant is presumed mentally competent unless proved mentally incompetent by a preponderance of the evidence (*Id.*, subd. (f)).  If the defendant is found to be mentally incompetent, then criminal proceedings are suspended until the defendant becomes mentally competent.  (§§ 1370, subd. (a)(1)(B), 1370.1, subd. (a)(1)(B).)

---

[1]  Regional centers are responsible for providing people with developmental disabilities the services to which they are entitled under the Lanterman Developmental Disabilities Services Act (Welf. & Inst. Code, §§ 4500-4846).  (*Association for Retarded Citizens v. Department of Developmental Services* (1985) 38 Cal.3d 384, 391.)  Regional centers are operated by private nonprofit community agencies.  (Welf. & Inst. Code, § 4620.)

If the defendant is found to be mentally incompetent and to have a developmental disability, then section 1370.1 controls subsequent proceedings. (§ 1367, subd. (b).) The term "developmental disability" means "a disability that originates before an individual attains 18 years of age, continues, or can be expected to continue, indefinitely, and constitutes a substantial disability for that individual" and includes "intellectual disability, cerebral palsy, epilepsy, and autism." (Welf. & Inst. Code, § 4512, subd. (a); see § 1370.1, subd. (a)(1)(H) [incorporating definition of developmental disability of Welf. & Inst. Code, § 4512].)

Under subdivision (a)(2) of section 1370.1, the defendant may not be placed in a treatment facility before being evaluated by the regional center director or the director's designee. Section 1370.1, subdivision (a)(2) provides: "Prior to making the order directing that the defendant be confined in a state hospital, developmental center, or other residential facility, or be placed on outpatient status, the court shall order the regional center director or the director's designee to evaluate the defendant and to submit to the court, within 15 judicial days of the order, a written recommendation as to whether the defendant should be committed to a state hospital, a developmental center, or to any other available residential facility approved by the regional center director. A person shall not be admitted to a state hospital, developmental center, or other residential facility or accepted for outpatient status under Section 1370.4 without having been evaluated by the regional center director or the director's designee."

## II.

### Statutory Changes Since Medina Was Found Mentally Incompetent

The current statutory scheme differs from the one in effect in 2017 (when Medina was adjudicated incompetent to stand trial and to have a developmental disability) in two critical respects:

7

• First, the version of section 1369 in effect in 2017 did not authorize the regional center to make a determination whether the defendant had a developmental disability and did not require the regional center to provide the court with a written report. (Former § 1369, subd. (a).) At that time, the regional center had authority only to examine the defendant and recommend a suitable residential facility or state hospital.[2] (*Ibid.*)

• Second, the version of section 1370.1 in effect in 2017 did not require the regional center's determination of developmental disability in order to suspend criminal proceedings. Former section 1370.1, subdivision (a)(1)(B) read: "If the defendant is found mentally incompetent and is developmentally disabled, the trial or judgment shall be suspended until the defendant becomes mentally competent." A trial court could make findings that a defendant was mentally incompetent and had a developmental disability even if the regional center had concluded to the contrary, and the court's findings were sufficient to suspend criminal proceedings.

By legislation effective January 1, 2019, section 1369 was amended to require the regional center to make a determination whether the defendant has a developmental disability, and therefore is eligible for regional center services, and to provide the court with a written report informing it of this determination. (Stats. 2018, ch. 1008, § 1.) The same legislation amended section 1370.1, subdivision (a)(1)(B) to require a determination by the regional center that the defendant has a developmental

_____

[2] The relevant portion of former section 1369, subdivision (a) stated: "If it is suspected the defendant is developmentally disabled, the court shall appoint the director of the regional center for the developmentally disabled . . . , or the designee of the director, to examine the defendant. The court may order the developmentally disabled defendant to be confined for examination in a residential facility or state hospital. [¶] The regional center director shall recommend to the court a suitable residential facility or state hospital. Prior to issuing an order pursuant to this section, the court shall consider the recommendation of the regional center director. While the person is confined pursuant to order of the court under this section, he or she shall be provided with necessary care and treatment."

disability in order to suspend criminal proceedings.  (Stats. 2018, ch. 1008, § 3.)  Thus, under the current version of section 1370.1, subdivision (a)(1)(B), criminal proceedings are suspended "If the defendant is found mentally incompetent *and* has been determined by a regional center to have a developmental disability."  (Italics added.)

## III.

## Procedures Following Placement

Under both the current version of section 1370.1 and former section 1370.1 in effect in 2017, a defendant adjudicated to have a developmental disability must be housed in either a developmental center, state hospital, or approved residential facility for treatment until either the defendant is restored to competence or the period of commitment ends.  (§§ 1370.1, subd. (c)(1)(A), (2)(A), 1372, subds. (a), (c); see *Carr v. Superior Court* (2017) 11 Cal.App.5th 264, 270 (*Carr I*).)

If a statutorily designated health official determines during the commitment that the defendant has "regained mental competence," that official must "immediately certify that fact to the court by filing a certificate of restoration with the court."  (§ 1372, subd. (a)(1).)  The filing of the certificate of restoration does not establish competence but initiates court proceedings to determine whether the defendant's competency has been restored.  (*Carr II, supra*, 59 Cal.App.5th at p. 1143.)  Upon the filing of the certificate of restoration, the defendant must be returned to court for "further proceedings" (§ 1372, subd. (a)(2) & (3)(A)), and the court must notify the designated mental health officials "of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence" (*Id.*, subd. (c)).

A defendant who has not regained mental competence within the maximum commitment period must be returned to court, and the regional center must be so notified.  (§ 1370.1, subd. (c)(1)(A) & (B).)  The trial court must consider whether the defendant may be subject to commitment under the Lanterman-Petris-Short Act (Welf. & Inst.

9

Code, § 5000 et seq.) or pursuant to Welfare and Institutions Code section 6502. (§ 1370.1, subd. (c)(2)(A).)  If these civil commitment provisions are found inapplicable, however, the defendant "shall not be subject to further confinement pursuant to [the incompetency statutes] and the criminal action remains subject to dismissal pursuant to Section 1385." (§ 1370.1, subd. (c)(2)(A).)

In 2017, the maximum confinement period under section 1370.1 was three years.  (Former § 1370.1, subd. (c)(1)(A).)  "'In no event can any defendant be committed longer than three years under this statutory scheme.'" (*Carr II, supra*, 59 Cal.App.5th at p. 1144.)  The maximum period currently is two years.  (§ 1370.1, subd. (c)(1)(A); see Stats. 2018, ch. 1008, § 3.)

## FACTS AND PROCEDURAL HISTORY

## I.

### Medina Adjudicated to be Mentally Incompetent to Stand Trial

In November 2016, Medina was charged by felony complaint alleging one count of second degree robbery (§§ 211, 212.5) and one count of misdemeanor sexual battery (§ 243.4, subd. (e)(1)).  As of November 8, 2016, Medina was in custody.

On March 24, 2017, Medina's counsel declared a doubt as to Medina's competence to stand trial.  The respondent court ordered criminal proceedings suspended and instituted competency proceedings under section 1368.  The court appointed two psychologists—Roberto Flores de Apodaca, Ph.D., and Jennifer A. Bosch, Psy.D.—to examine Medina.  Both psychologists concluded that Medina was competent to stand trial.  Dr. Bosch also concluded that Medina likely had a "borderline range of intelligence" due to a lack of schooling but no "gross cognitive abnormalities . . . nor developmental delays that would impact competency."

Medina engaged his own psychologist, Joseph M. Cervantes, Ph.D., to examine him and prepare a report.  Cervantes reached the conclusion that Medina's

10

intellectual abilities were in the impaired range with scores indicating mild to moderate intellectual disability. Cervantes prepared a report dated March 10, 2017 and a second report dated May 22, 2017. Both reports were filed with the court on May 31, 2017.

On June 2, 2017, Commissioner Edward Hall found Medina to be a mentally incompetent person pursuant to section 1367, subdivision (a). Although the court minutes do not expressly say so, Commissioner Hall must have found Medina to have a developmental disability because the matter was referred to the Regional Center of Orange County (RCOC) for an evaluation of available services. (See § 1370.1, subd. (a)(2), former § 1370.1, subd. (a)(2).) A commitment hearing was scheduled. The court's ruling that Medina was mentally incompetent and had a developmental disability was not appealed or challenged by petition for extraordinary writ.

## II.

### First Commitment Hearing: Medina Found Not Competent Due to Developmental Disability and RCOC Ordered to Make Placement Recommendation

Licensed Psychologist Frances L. Munguia, Psy.D., of the RCOC examined Medina and submitted to the court a report dated August 2, 2017. In the report, Munguia concluded that Medina did not meet the eligibility criteria for RCOC services because he did not have an intellectual disability or other eligible diagnosis and did not require treatment for an intellectual disability.

A commitment hearing was conducted on August 18 and September 18, 2017 before Commissioner Hall. Commissioner Hall again found Medina to be incompetent to stand trial due to a developmental disability. An order was issued pursuant section 1370.1, subdivision (a)(1)(H)(2) directing the RCOC to evaluate Medina and submit a placement recommendation. This order was not appealed or challenged by petition for extraordinary writ. In the meantime, Medina was housed in the county jail.

11

As of November 6, 2017, the RCOC had not made a placement recommendation, so Medina filed a motion to require the RCOC to do so. As of November 9, the RCOC still had not prepared a placement recommendation for Medina.

An evidentiary hearing was conducted on November 9 and 22, 2017 on the subject of commitment and placement. On the first day of the hearing, the respondent court commented: "[I]n an ideal world, I would like to order [Medina] to be transported directly to Porterville [Developmental Center][3] since that's a known developmental center. So does anybody have any thought or ideas about how this proposed order about getting Mr. Medina out of the county jail as quickly as possible might be accomplished? Understanding that I can order the sheriff to do anything, but, unfortunately, they have to transport someone to a facility, and if the facility . . . does not have bed space open, then we have to come back and address the issue another way."

Two orders were entered on November 9, 2017: (1) an order for the RCOC to make a placement recommendation pursuant to section 1370.1, subd. (a)(1)(H)(2), and (2) an order for transportation to the Porterville Developmental Center pending the placement recommendation.

### III.

### Second Commitment Hearing: RCOC Contends Medina Is Ineligible for Services

On November 20, 2017, the RCOC submitted a report dated November 17, 2017 regarding placement. The report did not make a placement recommendation. Instead, the report concluded "there is insufficient evidence to support the diagnosis of Intellectual Disability at this time" and "there is insufficient information to support a finding that Mr. Medina meets the criteria for eligibility for regional center services."

---

[3] The Porterville Development Center was as of April 2017 the only secure treatment facility in California for people with intellectual disabilities. (*Carr I, supra*, 11 Cal.App.5th at p. 267.)

The report advised: "Should Mr. Medina disagree with RCOC's finding of ineligibility, he has the right to request a Fair Hearing before the Office of Administrative Hearings. If Mr. Medina were to avail himself of this administrative remedy and be found eligible for RCOC services, RCOC's recommendation is that Mr. Medina be placed in a group home setting with concurrent outpatient treatment for alcohol abuse."

On November 20, 2017, the DDS filed a motion to vacate the placement recommendation order and the transportation order.

When the placement hearing resumed on November 22, 2017, counsel for the RCOC argued that it had exclusive statutory authority to determine whether a defendant is eligible for regional center services, that is, the defendant has a developmental disability. RCOC's counsel stated that an RCOC psychologist had assessed Medina and, in August 2017, had submitted a recommendation that Medina not be treated at the RCOC because he was not eligible for its services.

The court asked: "So the court's made a finding that [Medina]'s not competent to stand trial due to developmental disability. Where do I send him now for treatment?" RCOC's counsel answered, "I don't know. I don't have an answer." RCOC's counsel did not dispute that one medical professional had determined, and the court had found, that Medina did have a developmental disability. But RCOC's counsel asserted it was the "sole decision-maker" on eligibility for treatment at the RCOC.

Counsel for DDS also had no answer to the question of where to place Medina. DDS's counsel argued that DDS by statute could only accept people who have been deemed eligible by a regional center. Counsel acknowledged "there is a hole" in the system in Medina's case but asserted "until he's deemed eligible, we're precluded from admitting him. And the law was specifically amended in 2012 to prevent admission of people who have not been deemed eligible by the regional center."

Medina's counsel argued that, once a defendant has been found incompetent to stand trial due to a developmental disability, section 1370.1 requires the

13

regional center to make a recommendation for placement, but does not grant the regional center authority to deny services altogether.

The respondent court faced a dilemma: "[Medina] was found not competent to stand trial due to developmental disability, and the [RCOC] has found that [Medina] is not eligible for [RCOC] services." The court tried to resolve the dilemma by ordering that Medina be committed to the Department of State Hospitals (DSH) for placement at Patton State Hospital. Medina's counsel objected to placement at Patton State Hospital because it treats mental illness and Medina was found to have a developmental disability.

The respondent court ordered that Medina be committed pursuant to section 1370.1 to the DSH for placement at Patton State Hospital or the Liberty Healthcare Restoration to Competency Program. The court set the maximum term of commitment at three years and found the maximum sentence for the most serious offense alleged to be five years. The respondent court granted the DDS's motion to vacate and vacated the placement recommendation order and the transportation order.

**IV.**

**Medina Returned to Custody and Placed in a
Conditional Release Program**

On January 11, 2018, Medina was released on his own recognizance. He failed to appear for a hearing on January 12 and a bench warrant for his arrest was issued and held until January 18. When Medina failed to appear on January 18, the arrest warrant was released, and it was served on him on January 21. On January 23, 2018, the court ordered that no bail be set.

On January 25, 2018 Commissioner Hall vacated the commitment order (the incompetency order stayed in place). Medina remained in custody. Another commitment hearing was conducted, and, on March 27, 2018, Commissioner Hall ordered Medina committed to the Orange County Healthcare Agency Conditional

14

Release Program (ConRep) for outpatient competency treatment. Medina was released from custody and ordered to stay at the Victory Outreach Program for housing while being treated by ConRep.

## V.

### Medina Charged With Four More Misdemeanor Offenses

In June 2018, while Medina was subject to treatment by ConRep, he was charged with another misdemeanor violation of section 243.4, subdivision (e)(1) (sexual battery) (Case No. 18NM09342). The court discharged ConRep from Medina's case on July 11, 2018.

On August 16, 2018, Medina was charged with a misdemeanor violation of section 602, subdivision (*o*) (trespass) (Case No. 18NM12427) and, on August 21, 2018 was charged with another violation of the same statute (Case No. 18NM12676). On November 9, 2018, he was charged with a misdemeanor violation of section 602.1, subdivision (a) (intentional interference with business establishment) (Case No. 18NM17113). Medina was taken into custody on a warrant on November 13, 2018.

On November 28, 2018, the respondent court declared a doubt as to Medina's competence to stand trial in his four misdemeanor cases. The parties stipulated that Medina was incompetent, and the criminal proceedings were suspended in those cases.

## VI.

### Medina's Motion to Dismiss; Court Appoints Two Psychologists to Reexamine Medina

On December 7, 2018, Medina filed a nonstatutory motion to dismiss based on denial of due process and, on December 21, made an oral motion to dismiss under section 1385. On December 26, 2018, the respondent court (Judge Jonathan S. Fish) denied the motions. The court considered the time, effort, and money that granting the

motion would save and the seriousness of the charges. The court concluded that, on balance, "the court's concern of the gravity of the charges outweighs the notion that . . . many conveniences would be served by a dismissal." The court ordered a new competency hearing and found "there is no prejudice to the defendant in ordering further competency hearings in front of the committing court pursuant to . . . section 1370.1(b)(2)."

Medina filed a petition for writ of mandate/prohibition in this court to challenge the denial of his motions to dismiss. On May 7, 2019, a panel of this court denied the writ petition without prejudice to refiling a motion to dismiss in the trial court and a petition for writ of mandate in this court "if [Medina]'s circumstances are not satisfactorily addressed by respondent court in the next ninety days."

On March 29, 2019, over Medina's objection, the respondent court appointed two psychologists—Richard Lettieri and Roberto Flores de Apodaca—to examine Medina and assess his competence to stand trial. Both Lettieri and Flores de Apodaca concluded that Medina was competent to stand trial. May 24, 2019, after receiving the two psychologists' reports, the court, over Medina's objection, set the matter for a jury trial on competency for July 15, 2019. This court denied Medina's petition for writ of mandate/prohibition and request for immediate stay.

On June 24, 2019, the respondent court denied Medina's motion to be placed in treatment and motion to strike the reports of Lettieri and Flores de Apodaca. The court overruled Medina's objection to the appointment of any other doctors and to any future competency hearings.

## VII.

### Retrial on Competency: Court Declares It Lacks Authority and Commits Medina to the DSH

On July 15, 2019, the parties appeared in court before Commissioner Joseph Dane for a jury trial to determine competency. Apparently, the court had referred

Medina to the public guardian because, at trial that day, county counsel, appearing on behalf of the public guardian, explained that the doctors at the jail would not make a referral to the public guardian because they did not believe Medina met the criteria for a conservatorship. The court relieved the public guardian because a referral from the jail was necessary for a conservatorship, and there had been no finding that Medina was gravely disabled.

The second trial on mental competence was continued several times. On October 22, 2019 Medina's cases were reassigned to Judge Richard M. King, for trial on the issue of mental competency to stand trial.

On October 23, 2019, at the outset of trial, Judge King made the following comments, which were recorded in the minutes: "Commissioner Hall found defendant incompetent in 2017. The Court notes there are 2 paths under [section] 1368, which is . . . Section 1370 or . . . Section 1370.1. The [RCOC] never made a finding of a developmental disability. Second, there is no certificate of restoration for competency, therefore the court finds there is no jurisdiction for a jury trial under . . . Section 1372. [¶] . . . The Court reads [section] 1370(A)(1)(G) into the record and finds a hearing is necessary whether competency has been restored. The Court does not find it has jurisdiction to conduct a jury trial. [¶] . . . [¶] All parties agree there needs to be restoration of competency before there is a jury trial. . . . [¶] . . . [¶] The Court will adopt the procedures under . . . Section 1370.1. The defendant is mentally incompetent as previously ruled by Commissioner Hall. There is no restoration of competency and no finding by the [RCOC] as to a developmental disability. The Court finds the point we stand at is to conduct a hearing. [¶] Court will proceed under . . . Section 1370(A)(1)(G). [¶] . . . [¶] If the Court concludes that there is restoration, then the court will inquire with the parties if a jury trial will be required. If the court concludes that it has not been restored, then the case goes back under the procedures of . . . Section 1370."

17

On October 24, 2019, the respondent court denied Medina's second motion to dismiss the case pursuant to section 1385. On the same date, after testimony and argument by counsel had concluded, the respondent court found it did not have authority to conduct a second competency trial. The court also found it did not have authority to make a finding that competence has been restored because "that decision can only be done by the treating facilities." The court concluded that the "appropriate action" would be to "send the defendant to the state hospital." The court ruled as follows: "The defendant will be committed to a State Hospital under . . . Section 1370.1. The defendant is ordered to the State Hospital for treatment, if needed, to determine the defendant's speedy attainment of mental competence, and once attained, returned to court within the parameters of . . . section 1372. [¶] . . . [¶] Defendant to be committed to Patton State Hospital under . . . Section 1370.1. The clerk is ordered to prepare the commitment. The Hospital Director shall submit a progres[s] report as set forth in . . . Section 1370.1. [¶] It is ordered that the Orange County Sheriff shall deliver the defendant to the Department of Mental Health, Department of State Hospital[s] for care and treatment. . . . [¶] . . . [¶] . . The maximum possible term of imprisonment provided by law for the most serious offense charged is 5 Year(s). [¶] The Court sets the maximum term of the [section] 1370.1 commitment at 2 year(s). [¶] Credit for time served: 753 days toward the [section] 1370.1 commitment."

## VIII.

### Medina's Third Motion to Dismiss

On November 25, 2019, Medina filed a motion to dismiss pursuant to sections 1370.1(c)(1)(A) and 1385. The ground for the motion was Medina had reached his maximum term of commitment and had not been found to be competent by a treating facility. Medina argued his case should be dismissed because two years had passed since the date of his commitment and no certificate of restoration to competency had been returned.

On December 6, 2019, the respondent court issued a minute order by which the court found that no community program recommendation was needed because the commitment order to the DSH had been issued pursuant to section 1370.1. The court confirmed the commitment order was lawful and ordered Medina transported to the DSH "forthwith."

On December 20, 2019, the respondent court (Judge Michael F. Murray) denied Medina's motion to dismiss pursuant to sections 1370.1(c)(1)(A) and 1385. On February 3, 2020, Medina filed a petition for writ of mandate/prohibition in this court to challenge the denial of the motion to dismiss. After informal briefing, a panel of this court on May 14, 2020 issued the following order: "The parties are ordered to provide this court with the results of the hearings scheduled to be held by Judge King on May 15, 2020, and on May 20, 2020, and to advise this court by June 4, 2020, what effect if any, Judge King's ruling has on petitioner's claim that he has reached the maximum period of confinement for competency restoration pursuant to Penal Code section 1370.1."

## IX.

### Respondent Court Ordered to Determine Whether the Maximum Period of Commitment Had Elapsed

On May 27, 2020, the respondent court (Judge King) issued a minute order stating: "[T]his minute order is in place of the minute order that the Court issued on October 24, 2019 as it relates to custodial time. The minute order today will reflect that the defendant, as of October 24, 2019, spent 855 actual days in custody at the Orange County Jail and will be given credits of 855 days for a total of 1,710 days. The Court is making no determination at this time as to whether these credits should be applied for a 1370.1 commitment."

The May 27, 2020 order did not make a determination whether Medina had reached the maximum period of confinement. On June 12, 2020, this court issued an

19

order denying Medina's petition for writ of mandate/prohibition "to the extent that it requests the charges be dismissed against petitioner pursuant to Penal Code section 1385, and that petitioner be released on his own recognizance." This court chose to further treat the petition as a petition for a writ of habeas corpus and, as such, remanded the matter. The order states: "[I]t is ordered that this matter be remanded and returned to the Orange County Superior Court . . . for the purpose of holding an evidentiary hearing to determine whether a writ of habeas corpus should be issued in this matter. [¶] (1) The Superior Court shall set the matter for an evidentiary hearing to be held within 90 days from the date of this order and to conclude the hearing within 15 days, thereafter. [¶] (2) The evidentiary hearing shall be held for the purpose of determining whether the time period prescribed by Penal Code section 1370.1(c)(1)(A) has expired. [¶] (3) At the conclusion of the hearing, the Superior Court shall prepare and transmit to this court within 10 days, a minute order that includes any factual findings made by the court and the court's ruling."

## X.

**Respondent Court Determines the Maximum Period of
Commitment Had Not Elapsed and Vacates Verdict of
Mental Incompetence to Stand Trial**

The respondent court (Judge King) conducted a hearing on July 10, 2020. Counsel appeared on behalf the public guardian, the Orange County Sheriff, the RCOC, and the DSH. Counsel for the RCOC argued that Medina was ineligible for any program it offers. Counsel for the DSH stated that Medina did not have a mental illness it could treat. A representative from ConRep stated that Medina had participated previously in its outpatient program but did not follow protocol and absconded after the first visit. Counsel for Medina stated no treatment had been made available to him. After considering these statements, the court determined there was no possible treatment

20

program available for Medina and announced it would consider vacating the finding of incompetency after conducting the evidentiary hearing ordered by this court.

On July 24, 2020, Judge King conducted the evidentiary hearing this court had ordered to determine whether the commitment period prescribed by section 1370.1, subdivision (c)(1)(A) had elapsed. The court considered documents subpoenaed from the Orange County Sheriff's Department, briefing from the parties, and additional argument. The court concluded Medina's commitment period had not elapsed. The court believed the case to be at a "stalemate" because the RCOC did not agree with the adjudication that Medina was incompetent based on a developmental disability. The court then vacated Commissioner Hall's finding of incompetency to stand trial and set the case in Department C58 for the appointment of doctors and for another competency trial.

The respondent court issued an eight-page ruling explaining the basis for vacating the mental competency adjudication and the court's authority to do so. The court correctly recognized the nub of the problem: "Here, as is evidenced by procedural history, the court is in a position in which the governing law provides no remedy: the court found defendant incompetent to stand trial due to a developmental disability, but the [RCOC] found that he did not meet the criteria for eligibility for its services." (Bold, italics, and underscore omitted.) The court made note of the amendment to section 1370.1, effective January 1, 2019, requiring concurrence of the regional center in a finding of developmental disability, and commented, "the effect of the amendment is to avoid situations like the current one, in which the court has made a finding of incompetence but the defendant is ineligible for treatment through either the [DDS] or the [DSH]." The court stated: "The court is not trying to bypass clear procedural requirements, but rather to close a loophole that has led to endless litigation and has prejudiced both parties, as the defendant has yet to receive any treatment to restore competency and the People's case has been aged significantly. Commissioner Hall's verdict specified incompetency due to a developmental disability. Yet the defendant

can't receive treatment for restoration of competency under section 1370.1 . . . because the [RCOC] evaluation concluded the opposite."

On August 3, 2020, the respondent court issued an order stating: "As ordered by the Court of Appeal, . . . the Court conducted an evidentiary hearing on July 24, 2020, for the determination of 'whether the time period prescribed by Penal Code section 1370.1(c)(1)(A) has expired.' The Court concluded at the hearing that this time period had not expired in that the defendant's commitment during this period was 106 days."

On August 17, 2020, the respondent court (Judge Julian W. Bailey) appointed two psychologists—Jennifer A. Bosch and Janise Nekoranec—to examine Medina. A competency hearing was set for September 2, 2020.

## XI.

### Medina's Petition for Writ of Mandate/Prohibition and Our Directions to the Respondent Court

Medina filed this petition for writ of mandate/prohibition on August 18, 2020. The petition requested the issuance of a writ of mandate or prohibition directing the respondent court to vacate its order vacating Medina's commitment and to enter an order reinstating commitment. The petition also requested that Medina be released and his case dismissed. After inviting and receiving informal briefs, this court denied the petition on October 8, 2020.

Medina filed a petition for review in the California Supreme Court. On December 9, 2020, the Supreme Court granted review and transferred the matter to this court with directions "to vacate its order denying the petition for writ of mandate and to issue an order to show cause why petitioner is not entitled to the relief requested, based on his claims that (1) the superior court improperly vacated the earlier finding of incompetence; (2) the superior court exceeded the scope of the Court of Appeal's June

22

12, 2020 remand order; and (3) petitioner has been denied due process under the United States Constitution."

This court complied with the Supreme Court's directions by issuing an order vacating the order denying Medina's petition for writ of mandate/prohibition and ordering the respondent court to show cause why Medina is not entitled to relief based on his three claims identified by the Supreme Court in its order granting review. The district attorney (real party in interest) filed a return, and Medina filed a traverse to the return.

## DISCUSSION

### I.

### Respondent Court Did Not Have Statutory Authority to Vacate the Findings of Incompetence and Developmental Disability and Redetermine Competence to Stand Trial

A. *A Trial Court Does Not Have Statutory Authority to Redetermine Competence to Stand Trial Without a Certificate of Restoration*

The first issue on which the respondent court was directed to show cause was whether the court improperly vacated the earlier finding of incompetence to stand trial. As we shall explain, the statutory scheme for adjudicating competence to stand trial did not grant the respondent court authority to vacate the earlier finding of incompetence and conduct another competency hearing.

In addressing the first issue, the parties focus their arguments on whether the order adjudicating Medina to be incompetent to stand trial was a final judgment, which could not be changed, or an interim order, which would be subject to reconsideration. Relying on *People v. DeLouize* (2004) 32 Cal.4th 1223, the respondent court concluded, and the district attorney argues, the incompetency order was an interim order because further proceedings were required before the case could be resolved and judgment pronounced. In *People v. DeLouize, supra*, at pages 1231 through 1233, the Supreme Court held that an order granting a new trial in a criminal matter was an interim

23

ruling that may be reconsidered and vacated.  The Supreme Court explained that the proper approach to distinguish final orders from interim orders is not to use appealability as a test but to analyze "policies underlying the general concept of finality."  (*Id.* at p. 1232.)  "Orders and judgments are deemed final in the superior court, and not subject to reconsideration by that court, to preserve confidence in the integrity of judicial procedures and to avoid the delays and inefficiencies associated with repeated examination and relitigation of the same facts and issues."  (*Ibid.*)

We believe the policies set forth in *People v. DeLouize* would support treating the incompetency order and the finding of developmental disability as final.  Confidence in the integrity of the judicial process is not preserved by vacating an order of incompetence over three years after it was entered and without Medina ever having received treatment other than a brief stint in ConRep.

But we do not frame the issue as whether the competency adjudication was a final order or an interim order:  The issue as we see it is how an adjudication of incompetence fits within the statutory scheme laid down by the Legislature.  The correct approach here is to determine whether the statutory scheme permitted the trial court to vacate the incompetency order and conduct another competency hearing.  We conclude the respondent court erred because it acted outside of the "comprehensive and orderly process for evaluating defendants who are incompetent to stand trial."  (*Carr II, supra*, 59 Cal.App.5th at p. 1142.)

A court's power to conduct a competency hearing is a creation of statute and therefore a competency hearing "cannot be held without legislative authority."  (*In re Taitano* (2017) 13 Cal.App.5th 233, 254-255 (*Taitano*); see *People v. Quiroz* (2016) 244 Cal.App.4th 1371, 1380 (*Quiroz*) ["When the Legislature intends the court to hold a competency hearing, it expressly says so"].)  Mental competence of a criminal defendant to stand trial is governed by sections 1367 through 1376.  Section 1368 authorizes a court to conduct a competency hearing initially, when a doubt arises in the judge's mind as to

24

the defendant's mental competence.  (§ 1368, subds. (a), (b).)  Section 1372 authorizes a court to conduct a hearing after a certificate of restoration has been filed.  (§ 1372, subd. (c).)  No statute otherwise authorizes a trial court to vacate a finding of incompetency and conduct another hearing on the competency of a defendant found to have a developmental disability.

In *Taitano*, the defendant was adjudicated to be mentally incompetent as a result of a mental health disorder and was committed to the state hospital.  (*Taitano, supra*, 13 Cal.App.5th at p. 244.)  At the end of the commitment period, the prosecutor sought a second trial on the issue of the defendant's competency and recommitment.  (*Id*. at p. 247.)  The trial court denied the request, granted the defendant's petition for writ of habeas corpus, and ordered the defendant's release.  (*Id*. at p. 246.)  The Court of Appeal affirmed and held the trial court did not have authority to conduct a new competency hearing once the defendant had served the maximum statutory commitment period.  (*Id*. at pp. 239, 253.)

The *Taitano* court examined the language of section 1368 and former section 1370 and concluded they do not authorize a trial court to conduct a competency hearing once the commitment period has ended.  (*Taitano, supra*, 13 Cal.App.5th at pp. 248-251.)  Under former section 1370, subdivision (c)(1), a defendant who has served the maximum period of commitment is returned to the committing court only for the court to determine whether the defendant is "gravely disabled" for the purpose of instituting conservatorship proceedings.  (*Taitano, supra*, at p. 248.)  Section 1368 did not authorize a new competency hearing for three reasons.  First, section 1368 authorizes a competency hearing only if the judge has a doubt about the defendant's competence, not if the judge has a doubt about the defendant's *incompetence*.  (*Taitano, supra*, at p. 250.)  Second, section 1368 authorizes a competency hearing only during "'the pendency of an action'" and this phrase must refer "to the time when criminal proceedings are still *active* and pose a threat that the defendant will be tried and

25

convicted." (*Taitano, supra*, at p. 250.)  Third, section 1368 directs the court to suspend criminal proceedings if it grants a competency hearing; therefore, "section 1368 must apply at a time when there are still criminal proceedings to suspend." (*Taitano, supra*, at pp. 250-251.)

The *Taitano* court also examined the statutory scheme as a whole and concluded it neither expressly nor impliedly authorized a competency hearing once the defendant has served the mandatory period of commitment.  (*Taitano, supra*, 13 Cal.App.5th at pp. 251-255.)  The statutory scheme in effect at the time authorized the trial court to conduct a competency hearing only in two situations—(1) initially, when the judge doubts the defendant's competence to stand trial and defense counsel informs the court of his or her belief the defendant is or may be incompetent to stand trial (§ 1368) and (2) after the defendant has been hospitalized for 18 months (former § 1370, subd. (b)(4)).  (*Taitano, supra*, at pp. 240-241, 243, 255.)  No statutory provision authorized the trial court to conduct a competency hearing after the defendant's term of commitment had expired.  (*Id.* at pp. 248, 250, 255.)[4]

In *Quiroz, supra*, 244 Cal.App.4th 1371, 1375, the defendant was declared incompetent to stand trial and committed for treatment.  The state hospital, in its final report, stated the defendant remained incompetent to stand trial and was unlikely to

---

[4] The *Taitano* court considered four opinions in which a second competency hearing was permitted upon a showing of changed circumstances.  (*Taitano, supra*, 13 Cal.App.5th at pp. 251-252, citing *People v. Jones* (1997) 15 Cal.4th 119, 150, disapproved on another ground in *People v. Hill* (1998) 17 Cal.4th 800, 823; *People v. Kaplan* (2007) 149 Cal.App.4th 372, 384; *People v. Murrell* (1987) 196 Cal.App.3d 822, 827; *People v. Zatko* (1978) 80 Cal.App.3d 534, 548.)  The *Taitano* court correctly explained that in those cases the defendants initially had been adjudicated to be *competent* and, therefore, criminal proceedings against them were active when the second competency hearings were conducted.  (*Taitano, supra*, 13 Cal.App.5th at p. 252.)  "Obviously in those instances, the court might have to revisit the issue of competency in order to fulfill the statutory purpose of ensuring that a mentally incompetent person is not tried and convicted." (*Ibid.*)

26

regain competency in the foreseeable future. (*Ibid.*) The court ordered the public guardian to initiate proceedings for a conservatorship, but the public guardian found the defendant did not meet the requirements for one. (*Id.* at p. 1376.) The trial court denied the defendant's motion to be released from custody and to dismiss the information, and ordered a competency hearing. (*Ibid.*) The court conducted the hearing and concluded the defendant had been restored to competency. (*Id.* at p. 1377.)

The Court of Appeal held the trial court exceeded its jurisdiction by conducting a competency hearing after the state hospital made its finding the defendant was unlikely to regain competency. (*Quiroz, supra*, 244 Cal.App.4th at p. 1377.) The Court of Appeal reasoned that a competency hearing is a special proceeding and as such is a creation of statute. (*Id.* at p. 1379.) The competency statute in effect at that time permitted competency hearings in three circumstances only: (1) initially, when doubt arises in the judge's mind as to the defendant's competence to stand trial (§ 1368), (2) after the defendant has been hospitalized for 18 months (former § 1370, subd. (b)(4)), and (3) upon the filing of a certificate of restoration (§ 1372, subd. (c)). (*Quiroz, supra*, at p. 1380.)

The *Quiroz* court concluded that the Legislature did not authorize any other competency hearings. (*Quiroz, supra*, 244 Cal.App.4th at p. 1380.) The court explained: "[N]owhere in the statutes did the Legislature authorize a trial court to convene a new competency hearing upon the prosecution's request when the hospital returns the defendant from commitment at the end of three years or upon the hospital's finding of no substantial likelihood of regaining competency to stand trial. Nor do the statutes authorize the trial court to convene a competency hearing upon the prosecution's request when the public guardian determines not to initiate conservatorship proceedings. . . . [¶] The statute's language demonstrates the Legislature did not intend for courts to hold competency hearings upon a defendant's return after completing the maximum commitment." (*Ibid.*) A competency hearing is not permitted unless it is expressly

27

authorized because, the *Quiroz* court concluded, "[w]hen the Legislature intends the court to hold a competency hearing, it expressly says so." (*Ibid.*)

In *Taitano* and *Quiroz*, the courts held that competency hearings after completion of the maximum term of commitment were statutorily unauthorized; here, a redetermination of competence to stand trial without a certificate of restoration would be unauthorized. In June 2017, Commissioner Hall conducted a hearing and adjudicated Medina to be incompetent to stand trial and to have a developmental disability. This hearing was authorized by section 1368. No statute authorized the respondent court to vacate the adjudication of incompetence and conduct another competency hearing. Although Judge King came to doubt Medina's *incompetence*, section 1368 authorizes a competency hearing only if the judge has a doubt about the defendant's *competence*. (*Taitano, supra*, 13 Cal.App.5th at p. 250.) Judge King recognized this lack of authority in October 2019 when, after finding that Medina was subject to section 1370.1, found that only the treating facilities could make the decision that competence had been restored.

Under the statutory scheme, once Medina was adjudicated mentally incompetent to stand trial and to have a developmental disability, he was required to be housed in a developmental center or state hospital for treatment until either he regained competence or his term of commitment ended. (§§ 1370.1, subds. (a)(1)(B), (c)(1)(A) & (2)(A), 1372, subds. (a), (c).) The statutory scheme lays out the procedure that must be followed to determine whether a defendant has regained competence. First, the designated health official files a certificate of restoration with the court. (§ 1372, subd. (a)(1).) Second, the defendant is returned to court for further proceedings. (*Id.*, subd. (a)(2).) Third, the trial court determines whether to approve the certificate of restoration. (*Id.*, subds. (c), (d).) Fourth, the trial court notifies the designated mental health officials "of the date of any hearing on the defendant's competence and whether or not the defendant was found by the court to have recovered competence." (*Id.*, subd. (c).)

No certificate of restoration was filed in the present case. The procedures following the filing of a certificate of restoration therefore were not and could not have been followed.

For defendants who have been found incompetent as a result of a mental health issue, in contrast to defendants found to have a developmental disability, the Legislature has authorized a second competency hearing during the commitment period without a certificate of restoration. Section 1370, subdivision (a)(1)(G) permits the court to conduct a competency hearing if there is substantial evidence of a change in the defendant's condition.[5] Medina was found to have a developmental disability and therefore was subject to section 1370.1, not section 1370. Section 1370.1 does not have a provision allowing the court to determine restoration of competence during the commitment period. The lack of such an express provision in section 1370.1 serves to emphasize the Legislature did not intend to authorize the court to conduct a second competency hearing, without a certificate of restoration, during the commitment period of a defendant found to have a developmental disability.

The adjudication that Medina was incompetent to stand trial due to a developmental disability was legal, valid, and binding. The respondent court was not bound by, and could decline to follow, the RCOC's evaluation and recommendation. Under the version of section 1369 and section 1370.1 in effect in 2017, when Medina was

_____

[5] Section 1370, subdivision (a)(1)(G) reads: "If, at any time after the court has declared a defendant incompetent to stand trial pursuant to this section, counsel for the defendant or a jail medical or mental health staff provider provides the court with substantial evidence that the defendant's psychiatric symptoms have changed to such a degree as to create a doubt in the mind of the judge as to the defendant's current mental incompetence, the court may appoint a psychiatrist or a licensed psychologist to opine as to whether the defendant has regained competence. If, in the opinion of that expert, the defendant has regained competence, the court shall proceed as if a certificate of restoration of competence has been returned pursuant to paragraph (1) of subdivision (a) of Section 1372, except that a presumption of competency shall not apply and a hearing shall be held to determine whether competency has been restored."

29

found to be incompetent and to have a developmental disability, the regional center did *not* have the authority to make a recommendation as to whether a defendant had a developmental disability, and the regional center's concurrence in a finding of developmental disability was not required.[6] (Former § 1370.1, subd. (a)(1)(B).) Criminal proceedings were suspended upon the respondent court's finding Medina to be incompetent to stand trial and to have a developmental disability, regardless of the recommendation or beliefs of the RCOC. (*Ibid.*)

In addition, the district attorney (or the RCOC and the DSH) never challenged by appeal or petition for extraordinary writ the determination that Medina was incompetent to stand trial. In fact, in November 28, 2018, when the respondent court declared a doubt as to Medina's competency to stand trial in his four misdemeanor cases, the parties stipulated that Medina was incompetent. It is too late now to challenge the adjudication of Medina's incompetence, and we reject the district attorney's entreaty to us to reweigh the evidence presented to Commissioner Hall.

The respondent court was indeed facing a difficult situation. The case was at an impasse: Medina had been found to have a developmental disability, but the RCOC disagreed with that finding and refused to treat him. At the commitment hearing in November 2017, counsel for RCOC and counsel for DDS had no answer to the court's question of where to place Medina. But it was RCOC's legal obligation to have an answer. The respondent court's adjudication was binding on the RCOC; it had a legal

---

[6] The legislation effective January 1, 2019, under which a finding of developmental disability required a concurrence by the regional center, does not apply retroactively. Competency proceedings are civil in nature and collateral to the determination of guilt. (*Centeno v. Superior Court* (2004) 117 Cal.App.4th 30, 43.) A civil statute has prospective application only unless it has an express provision for retroactive application. (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1212-1213.) No such express provision appears in the legislation amending former sections 1369 and 1370.1. (See Stats. 2018, ch. 1008, §§ 1, 3.) The district attorney acknowledges the amendments are not retroactive.

obligation to recommend a suitable placement and could not avoid that obligation by claiming Medina did not have a developmental disability. To conclude otherwise would give the RCOC ultimate authority to determine whether Medina had a developmental disability, and the regional center did not have that statutory authority in June 2017.

In sum, absent a certificate of restoration, the respondent court did not have authority to vacate the orders determining that Medina was mentally incompetent to stand trial and had a developmental disability. No certificate of restoration had been filed, and "the statutory scheme envisions that until a defendant with a developmental disability attains competency, he or she will be housed in either a developmental center or state hospital for treatment." (*Carr I, supra*, 11 Cal.App.5th at p. 270.) The "comprehensive and orderly process" for evaluating and treating defendants who are incompetent to stand trial (*Carr II, supra*, 59 Cal.App.5th at pp. 1142-1143) does not include any provision that would permit a trial court to reconsider an adjudication of incompetence of a defendant with a developmental disability when no certificate of restoration has been filed.

B. *A Defendant May Be Evaluated and a Certificate of Restoration Filed Before Treatment*

The version of section 1370.1 in effect in 2017 had a gaping hole: A trial court could find that a defendant had a developmental disability without the regional center's concurrence, even though the regional center must provide treatment. The legislation effective January 1, 2019 plugged the hole, but only going forward, as it does not apply retroactively. Nonetheless, for matters subject to former sections 1369 and 1370.1, such as this case, there was a means to end a standoff. The proper procedure in this case would have been for the RCOC or the DDS to file a certificate of restoration if either believed Medina had never been incompetent to stand trial. *Carr I*, *supra*, 11 Cal.App.5th at page 264 demonstrates how this would have worked.

31

While in jail awaiting trial, the defendant in *Carr I*, was adjudicated to be mentally incompetent to stand trial and to have a developmental disability. (*Carr I*, *supra*, 11 Cal.App.5th at p. 267.) Before a placement determination was made, the state sought to have the defendant evaluated by a psychologist from the DDS and a psychiatrist from the DSH. (*Ibid.*) The trial court determined further evaluation would not be prejudicial or delay placement in light of conflicting opinions about whether the defendant had been feigning incompetence. (*Ibid.*) The psychiatrist retained by the DSH concluded the defendant was competent and had an antisocial personality disorder and borderline intellectual functioning. (*Id.* at p. 269.) The psychiatrist filed a declaration and certificate of restoration to competence, and a second competence trial was scheduled. (*Ibid.*)

The Court of Appeal denied the defendant's petition for writ of mandate challenging the second competence trial. (*Carr I*, *supra*, 11 Cal.App.5th at p. 269.) The California Supreme Court granted review and transferred the matter back to the Court of Appeal with directions to issue an order directing the respondent court to show cause why relief should not be granted. (*Ibid.*)

After issuing the order to show cause and briefing, the Court of Appeal denied the defendant's petition for writ of mandate because the declaration and certificate of restoration filed in the trial court was adequate to initiate proceedings under section 1372 to determine whether the defendant's competency had been restored. (*Carr I*, *supra*, 11 Cal.App.5th at pp. 267, 271.) The defendant's basic contention was similar to Medina's: "The crux of [the defendant]'s legal challenge to the competency proceedings turns on the application and import of the directive in section 1370.1 that a developmentally disabled defendant who is found incompetent to stand trial be transferred to a state hospital or developmental center for care and treatment. (§ 1370.1, subd. (a)(1)(B)(i).) According to [the defendant], once such a defendant has been assessed by the State Department of Developmental Services and receives a

32

recommendation for placement, the defendant's competence to stand trial may not be reassessed until he or she has been transferred to such an institution and provided care and treatment designed to restore competency." (*Carr I*, *supra*, 11 Cal.App.5th at p. 270.) The court disagreed: "[T]he mere fact that the court ordered [the defendant's] placement in a treatment facility does not preclude state hospital officials from certifying his competence to the court when they sincerely conclude that he was never incompetent in the first place." (*Id.* at p. 272.)

The Court of Appeal in *Carr I* shared the defendant's concerns over delays in placing defendants in suitable facilities, but concluded that "requiring defendants to be placed in state hospitals when the state officials and mental health professionals in charge of their care honestly conclude they are malingering will exacerbate the delays faced by defendants truly in need of restorative treatment." (*Carr I*, *supra*, 11 Cal.App.5th at p. 272.) The court rejected the defendant's claim that the certificate of restoration was a subterfuge because "[the defendant] has the opportunity to demonstrate before the trial court in the upcoming competency trial that his diagnosis of malingering was a sham done to circumvent the court's placement order." (*Ibid.*)

Here, the RCOC, as its counterpart in *Carr I*, never believed that Medina had a developmental disability. In its initial report from August 2017, the RCOC concluded that Medina was not eligible for its services. In 2019, Lettieri and Flores de Apodaca examined Medina and concluded he was competent to stand trial. But if the RCOC or the DSH believed Medina were competent, either could and should have filed a certificate of restoration in the respondent court. As *Carr I* holds, it was not necessary for Medina to have first been provided care and treatment for a certificate of restoration to be filed. (*Carr I, supra*, 11 Cal.App.5th at p. 272.) A certificate of restoration would have triggered the respondent's court's authority under section 1372 to determine whether Medina had in fact regained competence. No certificate of restoration was filed

33

in the present and, without one, a redetermination of competence to stand trial was unauthorized.

## II.

### The Remand Order Did Not Bar the Respondent Court From Undertaking Further Action in This Matter

The second issue on which the respondent court was directed to show cause was whether the respondent court had exceeded the scope of our June 12, 2020 remand order denying Medina's petition for writ of mandate/prohibition. We conclude the respondent court acted beyond the scope of our directions. The remand order did not, however, bar the respondent court from undertaking further actions in this matter.

The June 12, 2020 remand order has very specific directions. The order first states the matter is remanded for the purpose of holding an evidentiary hearing to determine whether a writ of habeas corpus should issue. The order then sets forth directions to the respondent court to hold that hearing and make that determination: (1) The hearing must be held within 90 days from the date of the order and must conclude within 15 days thereafter; (2) the purpose of the evidentiary hearing is to determine whether the commitment period prescribed by section 1370.1(c)(1)(A) has elapsed; and (3) at the conclusion of the hearing the court must prepare and submit to us within 10 days a minute order with any factual findings.

Thus, the scope of our directions was limited to holding an evidentiary hearing on the issue whether Medina had served the maximum period of commitment and to transmit to us, in the manner prescribed, the court's factual findings and ruling. The court's order vacating the adjudication of incompetency and setting a new competency hearing was beyond the scope of the directions set forth in our June 12, 2020 order.

The rule is "[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.) When an appellate

34

court remands a matter with directions to the trial court, those directions are binding, and any material variance from them is unauthorized and void. (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64.)

Under this rule, any variance by the respondent court from the directions in our June 12, 2020 order would be unauthorized. But this is not a case in which the matter was remanded following an appeal from a final judgment or order. For example, in the situation in which an appellate court affirms a judgment of conviction but remands with directions regarding sentencing, the trial court's jurisdiction is limited to the sentencing issue and the court cannot also retry the issue of guilt. The trial court's jurisdiction is limited the by terms of remand because all other issues in the matter have been resolved.

Our June 12, 2020 order was made in connection with a petition for writ of mandate and therefore was issued to the respondent court in the midst of an ongoing case that had not yet reached final judgment. In those circumstances, the directions in the June 12, 2020 order, though binding on the respondent court, did not limit the respondent court's jurisdiction in the case going forward. Otherwise, the court would lack jurisdiction to take any further action in the case.

Because Medina's case was ongoing, our June 12, 2020 order did not limit the respondent court's jurisdiction to take actions and make decisions in addition to complying with our directions. That does not mean the respondent court's order vacating the incompetency adjudication and setting another competency hearing was valid; it simply means the order was not invalid on the ground it exceeded the scope of remand.

## III.

### Medina Has Suffered a Due Process Violation If He Has Been in Custody for a Period of Time Longer than the Period Prescribed by Section 1370.1(c)(1)(A)

The third issue on which the respondent court was directed to show cause was whether Medina has been denied due process under the United States Constitution.

Medina argues he has been denied due process because, despite the adjudication of incompetence, "[t]he government and the court have failed him and have not provided the treatment that he is entitled to under the law", and, as a consequence, he "has lost, and effectively been cheated of, almost three years of his life." According to Medina, "[t]his is the definition of being denied due process of the law."

In *Jackson v. Indiana* (1972) 406 U.S. 715, 738 (*Jackson*), the United States Supreme Court concluded that an indefinite detention of an incompetent person violated due process. The *Jackson* court adopted two principles to guide courts in avoiding due process violations. First, "a person charged by a State with a criminal offense who is committed solely on account of . . . incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability . . . [of] attain[ing] that capacity in the foreseeable future. If it is determined that this is not the case, then the State must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." (*Id.* at p. 738, fn. omitted.) Second, "even if it is determined that the defendant probably soon will be able to stand trial, [the defendant's] continued commitment must be justified by progress toward that goal." (*Ibid*.)

In *In re Davis* (1973) 8 Cal.3d 798 (*Davis*), the California Supreme Court adopted the *Jackson* rule that "no person charged with a criminal offense and committed to a state hospital solely on account of his incapacity to proceed to trial may be so confined more than a reasonable period of time necessary to determine whether there is a substantial likelihood that he will recover that capacity in the foreseeable future." (*Id*. at p. 801.)

*Jackson* and *Davis* addressed indefinite commitments and did not establish time limits. As explained in *In re Albert C.* (2017) 3 Cal.5th 483, 494: "*Jackson* and *Davis* set constitutional limits defining when a detention becomes so lengthy or unjustified as to violate due process. But neither *Jackson* nor *Davis* requires any court to

36

make the reasonableness determination strictly on a case-by-case basis, with no presumption, time limit, or general guidance. . . . [¶] Indeed, neither *Jackson* nor *Davis* rejected statutory time limits, presumptions, or flexible guidance concerning detention as unconstitutional. *Jackson* did not adopt any constitutional time limits '[i]n light of differing state facilities and procedures and a lack of evidence in [the] record' [citation] and *Davis* suggested that progress reports 'should be furnished no less often than every six months' and acknowledged that trial courts must exercise discretion [citation]. . . . [T]hese cases do not preclude the Legislature from establishing time limits for the commitment of incompetent adults (see Pen. Code, § 1370)."

The Legislature adopted the procedures of sections 1367 through 1376 and established the maximum confinement periods in response to *Jackson* and *Davis* and "to protect defendants' due process and equal protection rights not to be committed solely because of incompetence for longer than is reasonable." (*Jackson v. Superior Court* (2017) 4 Cal.5th 96, 101, 105; see *In re Albert C., supra*, 3 Cal.5th at p. 491.) "[T]he Legislature has determined that a defendant's rights under *Jackson* are protected by limiting commitment for the purpose of determining or restoring competence to no more than three years." (*Jackson v. Superior Court, supra*, at p. 106.) Once a defendant has served the maximum term of commitment, due process requires that he or she be released. (*Taitano, supra*, 13 Cal.App.5th at p. 252 ["Since [the defendant] served the maximum term of commitment under the terms of the statute, he cannot be confined any longer"].)

Here, the respondent court set the term of commitment at three years, the maximum permitted at the time. Medina has been in custody far longer than three years: He has been in custody since November 2016, except for a brief period when he was in the ConRep program and possibly while he was at Patton State Hospital.[7] Far more than

---

[7] On October 24, 2019, the respondent court ordered Medina committed to Patton State Hospital but it appears he was never transported there.

three years have elapsed since November 2017, when the respondent court issued the first commitment order.

In response to our remand order, the respondent court conducted a hearing and found that Medina's three-year commitment period had not elapsed because he had been in commitment for only 106 days. The finding of only 106 days resulted from the method for calculating the amount of time served in commitment. The three-year statutory limit has been held to apply only to the total period of time *actually spent* in commitment at a mental institution or treatment facility, with no credit given for time served in jail or prison. (*People v. G.H.* (2014) 230 Cal.App.4th 1548, 1558-1559; *In re Polk* (1999) 71 Cal.App.4th 1230, 1238.)

Medina argues the maximum commitment period of three years has run because all days since the date on which he was ordered committed, and not just days actually spent in a facility, must count toward the maximum confinement period of three years. We agree. The reason for counting only the days actually spent in commitment at an institution is that due process requires that commitment be limited to the period reasonably necessary to permit treatment for incompetence. (*People v. G.H., supra,* 230 Cal.App.4th at p. 1559.) Time spent in jail or prison "bears no relation to the period reasonably necessary to permit actual treatment." (*Ibid.*)

It appears that Medina has been subject to a commitment order for a period time far longer than necessary to permit treatment, and no certificate of restoration has been filed. Medina has not received the treatment to which he is legally entitled, due to the actions of the RCOC, the DDS, and the DSH. We have emphasized that the RCOC and the DSH did not have the statutory right or any other legal authority to defy the respondent court's adjudication of incompetence and finding of developmental disability, which were valid and binding, and decline to treat Medina. Medina has languished in jail for years without treatment and without the ability to accrue credit toward his term of commitment. Under these circumstances, applying only days actually spent in treatment

38

at a facility toward the maximum confinement period of three years would violate due process. All time that Medina has spent in custody since the November 2017 commitment order, whether in jail or in prison, must be counted toward the three-year maximum confinement period.

In *Stiavetti v. Clendenin* (June 15, 2021, A157553) __ Cal.App.5th __ [2021 Cal.App. Lexis 502], the Court of Appeal addressed the claim that defendants found incompetent to stand trial were being held in county jails for long periods of time while awaiting transfer to the state hospital for substantive services. The court concluded that for all defendants found incompetent to stand trial, including those having a developmental disability, due process requires that substantive services designed to return those defendants to competency must commence within 28 days of service of the date of service of the order of commitment. (*Id*. at p. __ [2021 Cal.App. Lexis 502 at *4-*5].) "Despite recent legislative action and other initiatives discussed in this opinion, too many of these defendants' due process rights continue to be violated due to lengthy waits in county jails. For this reason, we conclude the trial court's imposition of a 28-day constitutional outer limit for commencement of substantive service was both appropriate and necessary." (*Id*. at p. __ [2021 Cal.App. Lexis 502 at *83-*84].)

Although *Stiavetti v. Clendenin* does not directly address the issues presented here, it lends support to the proposition that Medina, who has been held in jail awaiting treatment for well over three years since his commitment hearing, will have suffered a due process violation if his time in custody is not counted toward the maximum commitment period.

We shall direct the respondent court to conduct another hearing to determine whether the time period prescribed by former section 1370.1(c)(1)(A) has elapsed. This time, *all* days spent in custody in jail or prison, or spent in treatment, from the date of the commitment order (November 22, 2017) to the date the hearing is completed must be applied toward the maximum commitment period. The court may

decline to apply any periods of time from May 10 to October 22, 2019 during which the second competency hearing was continued by request of Medina. If the court determines that the maximum time period of commitment has elapsed, then the court must proceed pursuant to section 1370.1, subdivision (c).[8]

If the respondent court determines the maximum time period prescribed by former section 1370.1(c)(1)(A) has not elapsed, then the court must consider whether to dismiss the charges pursuant to section 1385 and/or the due process clause of the United States Constitution.

In his writ petition, Medina makes the representation that his competency status in his misdemeanor cases (Superior Court case Nos. 18NM09342, 18NM12427, 18NM12676, and 18NM17113) has been addressed by a separate filing with the Appellate Division of the respondent court. If the Appellate Division has rendered a decision, it is not among the exhibits submitted in connection with these writ of mandate proceedings. Although Medina's writ petition challenges decisions and orders made only in Superior Court case No. 16NF3065, our opinion in this matter, including the disposition and order, should be considered and followed by the respondent court in Medina's misdemeanor cases.

## DISPOSITION AND ORDER

The petition for writ of mandate/prohibition is granted in part. Let a writ of mandate issue directing the respondent court to do the following:

---

[8] The procedures required by section 1370.1, subdivision (a), are: The defendant is returned to court, the regional center is notified, and the court considers whether the defendant may be subject to commitment under the Lanterman-Petris-Short Act or pursuant to Welfare and Institutions Code section 6502. (§ 1370.1, subd. (c)(1)(A) & (B).) If the court finds that these commitment provisions are inapplicable, the defendant is not subject to further confinement and the criminal charges are subject to dismissal pursuant to section 1385. (§ 1370.1, subd. (c)(2)(A).)

1. Vacate the July 24, 2020 order vacating the June 2, 2017 order and the September 18, 2017 order adjudicating Medina to be mentally incompetent to stand trial and to have a developmental disability.

2. Reinstate the June 2, 2017 order and the September 18, 2017 order adjudicating Medina to be mentally incompetent to stand trial and to have a developmental disability.

3. Vacate the order entered August 17, 2020 appointing Jennifer A. Bosch and Janise Nekoranec to examine Medina pursuant to section 1368 and setting a mental health competency hearing.

4. Vacate any and all orders and judgments adjudicating Medina to be competent to stand trial.

5. Set the matter for an evidentiary hearing forthwith, and in no event later than 60 days from the issuance of the remittitur in this matter, and conclude the hearing within 15 days from its commencement.

6. The evidentiary hearing shall be held for the purpose of determining whether the time period prescribed by former section 1370.1, subdivision (c)(1)(A) has elapsed. In making this determination, the respondent court must apply all days, from November 22, 2017 to the date the hearing is completed, which Medina has spent in custody, including time spent in jail and/or prison, and all time that Medina has spent in a treatment facility or on conditional release. The court may decline to apply any periods of time from May 10, 2019 to October 22, 2019 in which the second competency hearing was continued by request of Medina.

7. At the conclusion of the hearing, the respondent court shall prepare and transmit to this court, within 10 days, a minute order that includes any factual findings made by the court and the court's ruling.

8.  If the respondent court determines that the time period prescribed by former section 1370.1, subdivision (c)(1)(A) has elapsed, then the matter must proceed pursuant to section 1370.1, subdivision (c).

9.  If the respondent court determines that the time period prescribed by former section 1370.1, subdivision (c)(1)(A) has not elapsed, then the court must consider whether to dismiss the charges pursuant to section 1385 and/or the due process clause of the United States Constitution.

Except as set forth in this disposition and order, the petition for writ of mandate/prohibition is denied.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.


42